George DALE, et al. Plaintiffs

v.

ALA ACQUISITIONS I, INC., et al. Defendants

No. CIV.A. 3:00CV359LN.

United States District Court, S.D. Mississippi, Jackson Division.

Aug. 19, 2005.

Janet G. Arnold, Charles Greg Copeland, Copeland, Cook, Taylor & Bush, Ridgeland, Andrew B. Campbell—PHV, Wyatt, Tarrant & Combs, Nashville, TN, Alan F. Curley—PHV, C. Philip Curley—PHV, Robinson, Curley & Clayton, P.C., Chicago, IL, William W. Gibson—PHV, Wyatt, Tarrant & Combs, Nashville, TN, Cynthia H. Hyndman—PHV, Robinson, Curley & Clayton, P.C., Chicago, IL, Susan B. Loving—PHV, Lester, Loving & Davies, PC, Edmond, OK, J. Graham Matherne—PHV, Wyatt, Tarrant & Combs, Nashville, TN, Patrick A. McInerney—PHV, Blackwell, Sanders, Peper, Martin, LLP, Kansas City, MO, Scott B. Ostrow, Wyatt, Tarrant & Combs, Memphis, TN, Robert C. Richardson, Copeland, Cook, Taylor & Bush, Ridgeland, Douglas J. Schmidt—PHV, Blackwell, Sanders, Peper, Martin, LLP, Kansas City, MO, Steve A. Uhrynowycz—PHV, Arkansas Insurance Department, Liquidation Division, Little Rock, AR, for Plaintiffs or Petitioners.

Timothy Reese Balducci, The Langston Law Firm, PA, Booneville, Roger Jon Diamond(PHV), Roger Jon Diamond, Attor-

ney, Santa Monica, CA, Jeffrey L. Ellis, Christopher & Ellis, Ridgeland, Margaret Parish Ellis, Kitchens & Ellis, Jackson, Lawrence S. Goldman(PHV), Law Offices of Lawrence S. Goldman, New York, NY, William F. Goodman, Jr., Watkins & Eager, Robert E. Hauberg, Jr., Baker, Donelson, Bearman, Caldwell & Berkowitz, PC, Jackson, Elizabeth M. Johnson(PHV), Law Offices of Lawrence S. Goldman, New York, NY, Jay Max Kilpatrick, Young, Williams, Henderson & Fuselier, James W. Kitchens, Kitchens & Ellis, Jackson, Joseph C. Langston, The Langston Law Firm, PA, Booneville, David J. Molton(PHV), David J. Molton, Attorney, New York, NY, Jonathan L. Rosner—PHV, Jonathan L. Rosner, Attorney, White Plains, NY, Thomas E. Royals, Royals & Mayfield, PLLC, James Grant Sellers, Watkins & Eager, Paul H. Stephenson, III, Watkins & Eager, Edwin Stephen Williams, Young, Williams, Henderson & Fuselier, Jackson, for Defendants or Respondents.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on plaintiffs' motion to exclude from evidence the Special Report by the Tennessee Comptroller of the Treasury. Defendant Dreyfus Service Corporation has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion to exclude should be denied.

This case was brought by the Commissioners of Insurance for five states, including Mississippi, Tennessee, Missouri, Oklahoma and Arkansas, in their capacities as receivers for a number of insurance companies, including Franklin American Life Insurance Company, allegedly defrauded of millions of dollars pursuant to a scheme devised and implemented by Martin Frankel and others. The Receivers sued Frankel and others allegedly involved in the scheme, as well as numerous others whose alleged negligence was claimed by the Receivers to have permitted Frankel and his conspirators to loot and launder the insurance companies' funds. Included in the latter group was Dreyfus Service Corporation.

As Dreyfus and the Receivers explain in the present motion, part of Dreyfus's defense to the Receivers' allegations against it is that the Receivers themselves should have recognized and halted Frankel's scheme prior to May 1999, and that their failure to do so relieves Dreyfus of the consequences of any negligence on its part. Among the proof Dreyfus intends to submit in support of its position in this regard is a July 2000 Special Report prepared by and at the direction of the Tennessee Department of Commerce and Insurance (TDCI), entitled "Review of Inaction on the Part of Insurance Division Employees Involved in the Regulation of Franklin American Life Insurance Company" (the Report).

The Report is the product of a review initiated in July 1999 by the Office of the Tennessee Comptroller of the Treasury, Department of Audit, Division of State Audit after certain "information was received by [the Department of Audit] from State of Tennessee officials and the national news media." According to the report, the news media had reported in May 1999 that Frankel had disappeared after allegedly stealing $200 million in funds from several insurance companies, including Franklin American Life (FAL), and the suggestion had been made by some that the TDCI had failed to react to significant warning signs and information available to it regarding FAL. The objectives of the

review undertaken by the audit team, as set forth in the Report, were

> to determine whether the department was in compliance with state statutes and national regulations in the guidelines in examinations and financial analyses of (FAL); to determine whether the department followed state and federal statutes in regard to the approval of the acquisitions of the company and Franklin American Corporation by Thunor Trust; to determine whether reasonable actions were taken on the part of department officials in the regulation of the company; to evaluate whether the department gave special treatment to the company; to identify any weaknesses in the department's internal controls over the examinations and analyses of (AL); to report our findings to the department and recommend appropriate actions to correct any deficiencies; and to report our findings to the Office of the State Attorney General; the United States General Accounting Office (GAO), the Federal Bureau of Investigation (FBI), and the general public.

The review consisted principally of a comprehensive review of all documents maintained by TDCI relating to FAL and interviews with then-current and former staff of TDCI. The Report's "Executive Summary" concludes that

> because department staff failed to exercise sufficient professional skepticism, conducted inadequate procedures and review, and misapplied procedures, regulators failed to detect the fraudulent nature of Mr. Frankel's activities before

May 1999. The department's gross breakdown in regulation of (FAL) occurred despite significant warning signs of questionable activities. Furthermore, there was a lack of communication between insurance division staff and other department officials.

The Report goes on to list specific weaknesses and "failures in the regulatory process of (FAL)" found by the auditors which allowed Frankel's fraud to go undetected.

The Receivers (including Paula A. Flowers, Commissioner of Commerce and Insurance for the State of Tennessee, in her official capacity as Receiver of Franklin American Life Insurance Company), have moved to exclude the report, contending it is inadmissible hearsay that lacks the requisite trustworthiness to fall within the hearsay exception for government reports contained in Federal Rule of Evidence 803(8)(C),[1] and that even if it were not inadmissible pursuant to Rule 803(8)(C), it should nevertheless be excluded pursuant to Rule 403 inasmuch as its probative value, if any, is "substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury," and/or because "considerations of undue delay, waste of time or needless presentation of cumulative evidence" counsel against its admission. Fed.R.Evid. 403.

 Rule 803 provides, in relevant part,

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

---

1. The Receivers do not dispute that the Report qualifies as a report of "factual findings resulting from an investigation made pursuant to authority granted by law." The Report was prepared pursuant to a review conducted at the direction of the Office of the Tennessee Comptroller of the Treasury, Department of Audit, Division of State Audit, which is charged by the State of Tennessee with responsibility for determining whether other state departments are performing their duties in an efficient and appropriate manner. Moreover, in accordance with Tennessee law, a report was required to be produced following the investigative audit, which becomes a public record.

(8) **Public records and reports.** Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth ... (C) in civil actions and proceedings ... factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

As recognized by the Fifth Circuit in *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1305 (5th Cir.1991), the Advisory Committee noted that " '[j]ustification for the exception is the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record,' " so that the rule accordingly " 'assumes admissibility [of 803(8)(C) reports] in the first instance.' " "Thus, evaluative reports are presumed not to be excluded under the hearsay rule unless there are indications of untrustworthiness. If the reports are untrustworthy, they are inadmissible." *Moss*, 933 F.2d at 1305. However, "[i]n light of the presumption of admissibility, the party opposing the admission of the report must prove the report's untrustworthiness." *Id.* In sum, then, the Report at issue, which was authored by persons charged with a legal duty and authorized to conduct the investigation, is presumed admissible under Rule 803(8)(C), including its opinions, conclusions and recommendations, unless the Receivers demonstrate its untrustworthiness.

In *Moss*, the court stressed that the Rule 803 trustworthiness requirement relates to reliability. The focus, the court explained, is not on whether the district court agrees (or disagrees) with the conclusions of the report, but rather on "whether the report was compiled or prepared in a way that indicates that its conclusions can be relied upon ("reliability")." *Id.* Toward that end, the Advisory Committee suggested " a nonexclusive list" of four factors that are intended to focus attention on the preparation of the report:

(1) the timeliness of the investigation; (2) the special skill or expertise of the official; (3) whether a hearing was held and at what level; and (4) possible motivational problems ....

■ In their motion to exclude the Report, the Receivers submit that the Report fails each of these reliability factors. According to the Receivers, the Report is untimely; the officials who created the Report lack any "special skill or expertise"; there was no hearing in connection with the creation of the Report; and as for possible motivational problems, discovery would be needed, which would be difficult, time-consuming, expensive, and ultimately, unnecessary, given that the Report is otherwise unreliable according to each of the other trustworthiness factors. The court finds the Receivers' arguments unpersuasive.

The Receivers first suggest that the Report was untimely because the review concerned fraudulent activities by Frankel dating to as early as 1991, years before the review was initiated. The fact is, however, the scheme was ongoing and the review was commenced within weeks of the exposure of Frankel's scheme, as expeditiously as circumstances permitted. In short, the fact that the Report concerned a fraudulent scheme that spanned many years is no basis for finding it to be untimely when a primary objective of the review was to ascertain why such ongoing fraud had not been discovered earlier.[2]

---

**2.** Notably, the Receivers also object that the Report is untrustworthy because it was prepared before all the details of the Frankel scheme had been exposed. In other words,

Neither in the court's opinion does the auditors' alleged lack of special skill or expertise tend to render the Report untrustworthy. The Receivers point out that the audit investigation was performed by employees of the Comptroller who had no experience in insurance regulation. These persons, the Receivers argue, obviously do not qualify as insurance regulatory experts under Federal Rule of Evidence 702 and hence were not qualified to render expert opinions about the matters contained in the report; nor, the Receivers continue, may these persons offer lay opinion testimony inasmuch as they admittedly have no first-hand knowledge of the events chronicled in the report.

■ "Rule 803(8) does not on its face require that the one who undertakes the investigation and authors the report be qualified as an expert before the report becomes admissible...." *Clark v. Clabaugh,* 20 F.3d 1290, 1294–1295 (3d Cir. 1994). Nevertheless, the court recognizes that the auditors' level of skill and expertise in the area involved is obviously highly relevant on the issue of trustworthiness. As Dreyfus aptly argues, however, the investigation did not involve complex questions of insurance law or regulation, and while it is true that the auditors on the

team were not experienced *insurance* regulators, the team did include experienced and certified fraud auditors [3] who were, in the court's opinion, amply qualified to perform the investigation and arrive at well-informed conclusions.

While no hearing was held, as the Receivers note, that fact does not tend to detract from the Report's trustworthiness. The TDCI was involved in the investigation, received a draft of the Report and apparently was given full opportunity for input, and there in no suggestion that the TDCI challenged any of the facts reported or conclusions reached.

The Receivers argue that discovery would be required to determine whether "possible motivational problems" exist, but they suggest no basis on which one might reasonably suspect any motivational problem. That is, they fail to suggest any possible motive that Tennessee audit officials would have had to unfairly characterize the performance of the TDCI.

■ In sum, the court concludes that the Receivers have failed to sustain their burden to demonstrate that the Report is untrustworthy. The court likewise finds no merit to the Receivers' argument that the Report ought to be excluded pursuant to Rule 403. The court rejects the Receivers'

---

they seem to be suggesting that the Report was both too late *and* too early. In the court's opinion, however, it is neither.

3. As Dreyfus explains, the audit was conducted under the direction of Arthur A. Hayes, Jr. and investigative Assistant Audit Director Glen W. McKay. Mr. Hayes is a certified public accountant and attorney, employed by the Department of Audit since 1979, and is active in the National State Auditors Association, a member of the Advisory Council of the School of Business, Tennessee State University, the Association of Certified Fraud Examiners, the Association of Government Accountants, the American Board of Forensic Examiners and the American Board of Forensic Accountants. Mr. McKay, who has

also been with the Department of Audit since 1979, has a Ph.D. in political science and an M.B.A. and is also a certified fraud examiner and certified internal auditor, certified information systems auditor and certified government financial manager.

The audit manager for the investigative team was Charles Toplin, a ten-year employee of the Department, who holds a masters in accounting and is a certified public accountant and a certified fraud examiner. Other members of the audit team were Shay Smith, a law school graduate and certified fraud examiner; Trey King, a criminal justice graduate who assisted with the investigation; and Amy Brack, who drafted the Report.

argument that in view of its lack of trustworthiness, the Report has little or no probative value. The court also rejects their argument that the Report is more prejudicial than probative because it "bears the imprimatur of an official government investigation [and is therefore] likely to be given great weight by a jury;" and because it might confuse or mislead the jury because it deals only with the conduct of regulators from only one of the five involved Receivers and it does not consider the role of others such as Dreyfus.

In *Moss, supra,* the Fifth Circuit addressed the position that a government evaluative report ought be excluded for fear the jury would give the report too much weight in its decision. The court opined that such analysis "would gut the admissibility of evaluative reports under Rule 803(8)(C) because [this reasoning] would be true for all evaluative reports." 933 F.2d at 1308. To use Rule 403 to exclude reports on this basis, the court held, "would end the presumption that evaluative reports are admissible hearsay under Rule 803(8)(C)." *Id.* The court explained that such potential prejudice is best handled not by excluding the report, but by appropriately instructing the jury:

> [C]ourts must nonetheless insure that juries do not abdicate their fact finding duties to government officials who prepare the reports. This concern, however, is true for all trials in which experts testify as to their opinions. To remedy the problem, the court must carefully instruct the jury that it is the sole judge of the facts and need not accept the conclusions of a report.

*Moss,* 933 F.2d at 1308.

The same holds true as to the Receivers' objection that the Report could be misleading to the jury or cause jury confusion because it addresses the regulation of only *one* of the five regulators. Appropriate instructions (as well as plaintiffs' counsel) should readily resolve any possible confusion.

The Receivers argue, finally, that admission of the Report should be excluded because it is merely cumulative of other direct evidence available to the parties, and would cause needless delay and a substantial waste of time, particularly since its admission would necessitate a "lengthy litigation sideshow" as to the reliability of the Report. The court is not persuaded.

Based on the foregoing, it is ordered that plaintiffs' motion to exclude the Report is denied.