# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-SA-01600-COA

RAWAN HAYAF, LLP, ALI M. SALEH, HAYAF SALEH AND SENA EDHA

APPELLANTS

v.

HERB FRIERSON, IN HIS OFFICIAL CAPACITY AS THE COMMISSIONER OF REVENUE OF THE MISSISSIPPI DEPARTMENT OF REVENUE

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/16/2019 |
| TRIAL JUDGE: | HON. DENISE OWENS |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANTS: | JAMES GARY McGEE JR. |
| ATTORNEYS FOR APPELLEE: | MATTHEW TIMMONS HENRY JOHN STEWART STRINGER |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 06/15/2021 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND SMITH, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1. After an audit, the Mississippi Department of Revenue (MDOR) issued tax assessments of sales tax and prepaid wireless tax to Rawan Hayaf LLP (Hayaf) and individual income tax to Ali M. Saleh, Hayaf Saleh,[1] and Sena Edha (referred to collectively as "Saleh"). Hayaf and Saleh appealed the decision to the Mississippi's Board of Tax

---

[1] We note that some documents in the record refer to Hayaf Saleh as Rayaf Saleh (e.g., the Board of Appeal's order). But the appeal documents indicate that Hayaf Saleh is the appropriate name.

Appeals (Board of Appeals), which upheld the MDOR's assessments. Hayaf and Saleh sought judicial review of the ruling in the Hinds County Chancery Court. The chancery court granted summary judgment in favor of the MDOR. Hayaf and Saleh appeal the court's decision. Finding no error, we affirm.

## STATEMENT OF FACTS

¶2. Hayaf is a limited liability partnership (LLP) created in June 2013 and owned by Ali Saleh and Hayaf Saleh. Hayaf operates a convenience store and gas station called Five Star, which is located in Meadville, Mississippi. The MDOR notified the Appellants on June 13, 2016, that their records were being audited for taxes due to the State of Mississippi for the period from "June 1, 2013, through current period(s)." The notice of audit advised them to "have available all records that prove income, deductions, exemptions, and credit necessary to determine their Mississippi tax liability."

¶3. On May 10, 2017, the MDOR assessed Hayaf sales tax in the amount of $120,860 and prepaid wireless tax in the amount of $3,175, for the audit period of June 1, 2013, through October 31, 2016. Ali M. Saleh was assessed $11,096 in individual income tax for the audit period of January 1, 2013, through December 31, 2015, and Hayaf Saleh and Sena Edha were assessed $17,226 in individual income tax for the same period. The assessments included penalty and interest.

¶4. The auditor based the tax assessments on documentation such as (1) the auditor's

2

recapped[2] daily and monthly sales sheets, which were based on the Appellants' own records; (2) the LLP's bank statements from 2015; (3) the 2015 general ledger; (4) 2015 purchase invoices; (5) monthly sales sheets for December 2014 through October 2016; (6) daily sales sheets for the audit period; (7) vender verification from third parties for gas purchases and sales; and (8) income-tax return information. However, according to the MDOR, much of the taxpayers' records were "sporadic and incomplete." Although there were 1,249 days in the sales-tax audit period (June 2013 through October 2016), Hayaf only provided records for 767 days. Therefore, the auditor had to use those records that were complete to calculate an average daily sales amount of $2,801.66, which was applied to the 482 missing days for which no records were available in order to calculate the total sales amount. Further, "the auditor could not tie the provided sales tax returns," which were prepared by a local accountant, to the taxpayer's bank statements; so additional records were requested. These were never provided.

¶5.     For this reason, the MDOR's sales-tax findings were entitled to a presumption of prima facie correctness under Mississippi Code Annotated section 27-65-37(1) (Supp. 2016), which states in relevant part:

> If adequate records of the gross income or gross proceeds of sales are not maintained or invoices preserved as provided herein, or if an audit of the

---

[2] Although the MDOR does not give a precise definition of what is meant by the term "recapped," we find the term is best defined in this instance as "to make or be able to make a summary." *Recapitulate*, https://www.merriam-webster.com/dictionary/recapitulate (last visited June 15, 2021).

records of a taxpayer, or any return filed by him, or any other information discloses that taxes are due and unpaid, the commissioner shall make assessments of taxes, damages, and interest from any information available, which shall be prima facie correct.

In *United Roofing and Construction of Mississippi v. Mississippi Department of Revenue*, No. 2019-CA-00570-COA, 2020 WL 7221730, at *7 (¶25) (Miss. Ct. App. Dec. 8, 2020), this Court explained that section 27-65-37 "comports with Mississippi Rule of Evidence 301," dealing with presumptions in civil cases. Rule 301 provides:

> In a civil case, unless a Mississippi statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally.

When taxpayers fail to keep adequate records of gross income and sales, "a presumption that the Commission's assessments are prima facie correct arises." *United Roofing*, 2020 WL 7221730 at *7 (¶25) (citing Miss. Code Ann. § 27-65-43 (Rev. 2017)). "[I]n order for the assessments to be prima facie correct, the auditor must make them 'from any information available' according to section 27-65-37, not necessarily 'from the best information available.'" *Id.* (quoting *Marx v. Bounds*, 528 So. 2d 822, 826 (Miss. 1988)). "[O]nce this presumption arises, the taxpayer bears the burden of proof showing that a genuine dispute exists regarding the correctness of the assessment." *Id.* (quoting *In re Fugitt*, 539 B.R. 289, 299 (Bankr. S.D. Miss. 2014)). The Appellants, however, have not challenged this presumption of prima facie correctness on appeal except with regard to the assessments of individual income tax, which we will address below.

4

**PROCEDURAL HISTORY**

¶6.     Hayaf and Saleh filed an appeal with the MDOR's Board of Review, and a hearing was conducted on October 3, 2017.  The Board of Review granted them two additional weeks to provide documentation to refute the MDOR's findings.  However, after the taxpayers produced no documentation in rebuttal, the Board of Review affirmed and upheld the tax assessments.  Hayaf and Saleh appealed the decision to the Board of Appeals, which also affirmed the assessments and issued its orders on June 12, 2018.[3]

¶7.     Hayaf and Saleh thereafter filed an appeal with the chancery court.  Upon the conclusion of discovery, the MDOR filed a motion for summary judgment on April 15, 2019, attaching exhibits of the notices[4] and the Appellants' responses to the MDOR requests for admission.  The MDOR's notices and audit papers fell within the public-records exception to hearsay found in Mississippi Rule of Evidence 803(8), which is identical to Federal Rule

---

[3] The tax assessment amounts were increased as follows to reflect penalty and interest: sales tax – $130,146; prepaid wireless tax – $3,420; individual income tax for Hayaf Saleh and Sena Edha – $19,666; and individual income tax for Ali Saleh – $12,391.

[4] The notices and exhibits, including the audit reports, were submitted to the chancery court with certificates of authenticity bearing the MDOR's seal and signed by the commissioner of the MDOR in compliance with Mississippi Code Annotated sections 27-3-19(2) and 27-3-83(3) (Rev. 2013); *see also* Miss. Code Ann. § 13-1-77 (Rev. 2012) (providing "[a]ll public officers in this state having the charge or custody of any public books, records, papers, or writings, are authorized to certify copies of the same"); M.R.E. 902(4) (defining manner in which certified copies of public records are considered self-authenticating evidence).

of Evidence 803(8).[5]  "[T]he hearsay exception for public records is grounded on the 'assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record.'"  *Cooper v. Meritor Inc.*, 363 F. Supp. 3d 695, 699 (N.D. Miss. 2019) (quoting Fed. R. Evid. 803(8) advisory committee note); *see also United States v. Filson*, 347 F. App'x 987, 992 (5th Cir. 2009) (finding no error in magistrate's decision to admit Internal Revenue Service (IRS) forms under Federal Rules of Evidence 803(8) and 902 for purposes of summary judgment, as they "constitute[d] valid evidence of a taxpayer's assessed liabilities and the IRS's notice thereof").[6]  Thus, because this hearsay evidence would have been admissible at trial, it was admissible for the purposes

---

[5] While not affecting our discussion, we note that both the state and federal rules were amended in 2016 and 2012, respectively.

[6] Further, in *Dale v. ALA Acquisitions I Inc.*, 398 F. Supp. 2d 516, 520 (S.D. Miss. 2005), the district court recognized that "in light of the presumption of admissibility [under Federal Rule 803(8)], the party opposing the admission of the report must prove the report's untrustworthiness." (Quoting *Moss. v. Ole S. Real Estate Inc.*, 933 F. 2d 1300, 1305 (5th Cir. 1991)).  The advisory committee note to Mississippi Rule of Evidence 803(8) states:

> [I]t is appropriate to impose the burden of proving untrustworthiness on the opponent, as the basic admissibility requirements tend to guarantee trustworthiness in the first place and thus suffice to establish a presumption that the record is reliable.  *See* Saltzburg, Martin, & Capra, Federal Rules of Evidence Manual, vol. 4, § 803.02[9][a] (11th ed.) (2017) ("Because of the strong presumption of reliability accorded to public reports, the burden of proving untrustworthiness is borne by the party seeking exclusion."); *Ellis v. International Playtex, Inc.*, 745 F.2d 292, 301 (4th Cir. 1984) (Public records rightly carry a presumption of reliability, hence it is up to the opponent to "demonstrate why a time tested and carefully considered presumption is not appropriate.").

M.R.E. 803(8) advisory committee note.

of summary judgment. *Ill. Cent. R.R. Co. v. Jackson*, 179 So. 3d 1037, 1043 (¶14) (Miss. 2015); *accord Indem. Ins. Co. of N. Am. v. Guidant Mut. Ins. Co.*, 99 So. 3d 142, 154-55 (¶34) (Miss. 2012) (recognizing a trial court's discretion "to consider any evidence at a summary judgment hearing that would be admissible at trial").

¶8. The chancery court subsequently denied the taxpayers' request for additional time for discovery and granted the MDOR's motion for summary judgment on September 16, 2019. Appealing the chancery court's decision to grant summary judgment, Hayaf and Saleh contend that (I) the MDOR failed to provide proper statutory notice of the sales tax and prepaid wireless tax assessments for the tax period from July 1, 2016, through October 31, 2016; (II) there was a genuine issue of material fact whether the CRIND (Card Reader in Dispenser Fuel Pump System) transactions were included in the MDOR's sales tax calculations; (III) there was insufficient evidence to support the MDOR's assessment of penalty and interest; and (IV) there was insufficient evidence to support the individual income tax assessments.

## STANDARDS OF REVIEW

¶9. Mississippi Code Annotated section 27-77-7(5) (Rev. 2017) establishes the process and standard of review for the chancery court's review of the MDOR's and Board of Appeals' decisions.:

> [T]he chancery court shall give no deference to the decision of the Board of Tax Appeals, the Board of Review or the Department of Revenue, but shall give deference to the department's interpretation and application of the statutes as reflected in duly enacted regulations and other officially adopted

7

publications.[7]  The chancery court shall try the case de novo and conduct a full evidentiary judicial hearing on all factual and legal issues raised by the taxpayer which address the substantive or procedural propriety of the actions of the Department of Revenue being appealed.  The chancery court is expressly prohibited from trying any action filed pursuant to this section using the more limited standard of review specified for appeals in [s]ection 27-77-13 of this chapter.  Based on the evidence presented at trial, the chancery court shall determine whether the party bringing the appeal has proven by a preponderance of the evidence or a higher standard if required by the issues raised, that he is entitled to any or all of the relief he has requested.

Further, "issues related to tax appeals are questions of law, which are reviewed by [our appellate courts] de novo."  *Miss Dep't of Rev. v. Comcast of Ga./Va. Inc.*, 300 So. 3d 532, 535 (¶12) (Miss. 2020).

¶10.    We also review a grant or denial of summary judgment de novo.  *Dailey v. Methodist Med. Ctr.*, 790 So. 2d 903, 906 (¶3) (Miss. Ct. App. 2001) (citing *Cossitt v. Alfa Ins. Corp.*, 726 So. 2d 132, 136 (¶19) (Miss. 1998)).  Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  M.R.C.P. 56(c).  "The moving party has the burden of demonstrating that there is no genuine issue of material fact in existence, while the nonmoving party 'should be given the benefit of every reasonable doubt.'"  *Howell v. USAA Cas. Ins. Co.*, 122 So. 3d 800, 803 (¶7) (Miss. Ct. App. 2013) (citing *Tucker v. Hinds County*, 558 So. 2d 869, 872 (Miss.1990)).  "As to issues on which the nonmovant bears the burden

---

[7] This underlined portion was later held unconstitutional by *HWCC-Tunica Inc. v. Mississippi Department of Revenue*, 296 So. 3d 668, 675 (¶37) (Miss. 2020).

8

of proof at trial, the movant needs only to demonstrate an absence of evidence in the record

to support an essential element of the movant's claim." *Cothern v. Vickers Inc.*, 759 So. 2d

1241, 1245 (¶6) (Miss. 2000) (citing *Crain v. Cleveland Lodge 1532, Order of Moose Inc.*,

641 So. 2d 1186, 1188 (Miss. 1994)). The nonmovant then "must by affidavit or otherwise

set forth specific facts showing that there are indeed genuine issues for trial." *Fruchter v.

Lynch Oil Co.*, 522 So. 2d 195, 199 (Miss. 1988).

## DISCUSSION

### I.  Notice of Tax Periods

¶11.  Mississippi Code Annotated section 27-65-42 (Supp. 2013) provides:

> (1) The amount of taxes due on any return which has been filed as required by this chapter shall be determined and assessed *within thirty-six (36) months from the date the return was filed* except as otherwise provided in this section and Section 27-65-55.

> (2) When an examination of a taxpayer's records to verify returns made under this chapter has been initiated *and the taxpayer notified of the examination*, either by certified mail or personal delivery by an agent of the commissioner, *within the thirty-six-month examination period* provided for in subsection (1) of this section, the determination of the correct tax liability shall be made by the commissioner within one (1) year after the expiration of the thirty-six-month examination period; however, this limitation shall not apply:

>> (a) To any tax period for which the taxpayer failed to file a return, in which case the tax, including any applicable penalties and interest, may be assessed by the commissioner *at any time* and the tax, penalties and/or interest so assessed may be collected by the commissioner as otherwise provided by law. . . .

(Emphasis added). The notice of the audit, issued on June 13, 2016, was within the thirty-six

month period allowed by section 27-65-42 for audits of verifying taxes due, tolling the statute

9

of limitations by one year from the date of the expiration of the thirty-six month examination period starting on June 1, 2013.[8]

> ### A. Whether Hayaf received proper notice of the sales tax audit.

¶12. Hayaf argues that the notice of audit issued on June 13, 2016, indicated "that the audit period for sales tax was from June 1, 2013 *to* 'current period(s).'" (Emphasis added). Hayaf therefore avers that the audit period was from June 1, 2013, to June 30, 2016, preventing the tax assessments to continue through October 31, 2016. However, as the MDOR notes, this is an incorrect reading of the notice of audit, which actually read "June 1, 2013, *through* current periods." (Emphasis added). This allowed the audit period to be open-ended. Hayaf responds that "Merriam-Webster" states that both "through" and "to" function to indicate a certain and not an open-ended period; therefore any distinction is "irrelevant."

¶13. We reject Hayaf's contention. Among the definitions for "through" used by Merriam-Webster is "to and including [a period of time]." *Through*, https://www.merriam-webster.com/dictionary/through (last visited June 15, 2021). Because the audit commenced on June 1, 2013, "to and including [current period(s)]," the final four months were clearly meant to be included in the notice. If the notice was intended to be limited to June 1, 2013, through June 13, 2016, then the MDOR would have stated those

---

[8] It is not clear from the record precisely when tax returns were filed, but the LLP was not created until June 2013. Further, Hayaf has never challenged the receipt of proper notice for the period between June 1, 2013, and June 13, 2013. Therefore, any claim of error for that period would be waived.

fixed dates. Instead, the MDOR left the ending date open to allow the auditors time to complete the audit and bring the taxpayers up to date on their tax liabilities.[9] This procedure is within the meaning of the statute, and we find Hayaf was properly notified of this intent.

> B. *Whether Hayaf received proper notice of the prepaid wireless tax audit.*

¶14. As quoted, section 27-65-42(2)(a) provides that for any tax period where a taxpayer fails to file a return, his liability, including penalties and interest, may be assessed "at any time." Hayaf's failure to register and remit prepaid wireless taxes was discovered during the audit, placing it within this statutory provision and eliminating the limitations period on the prepaid-wireless audit. The MDOR presented evidence of the notices to the chancery court, as well as Hayaf's responses to MDOR requests for admission:

> Request No. 17: Please admit that the Department issued a Prepaid Wireless Tax/E911 Charge Assessment against Rawan Hayaf, LLP on or about May 10, 2017. [. . .] Response No. 17: Admitted.
>
> Request No. 18: Please admit that Petitioner Rawan Hayaf, LLP, was not registered for Prepaid Wireless Tax at the time the audit stated in June 2016. Response No. 18: Admitted.

As such, we find that Hayaf was properly notified of the audit in accordance with the statute, and Hayaf's contentions to the contrary are without merit.

## II. CRIND Transactions

---

[9] The period from July 2016 to October 2016 is unaffected by the statute of limitations because the audit started within the thirty-six-month period allowed by section 27-65-42.

¶15.   Hayaf alleges that the sales-tax assessment is incorrect because the MDOR did not accurately account for CRIND[10] transactions in its assessment.  The taxpayers' point-of-sale system calculated a total sales figure; this figure was extrapolated daily and monthly and used to produce a Store Sales Summary Report, which indicated total sales.  This point-of-sales system automatically calculated a seven-percent (7%) sales tax on all sales, including CRIND transactions, which are not subject to sales tax.  Therefore, an adjusting entry was needed to account for the untaxed CRIND transactions included in the total sales figures.

¶16.   The record demonstrates that Hayaf's Store Sales Summary Reports had separate columns for fuel (CRIND) and non-fuel sales; this allowed the MDOR to adjust for the CRIND transactions.  This separation of fuel and non-fuel sales is kept in all subsequent audit records.  Furthermore, the Store Sales Summary Reports included a fuel sales figure and CRIND credit and debit figures as part of a total sales figure.  While there is no evidence in the record of the auditor's exact procedure or method of calculation, the MDOR's requests for admissions provide an indication of how the auditor performed his work.  For example, Request No. 4 lists the necessary documents requested in the notice of audit for the audit. Request and Response Nos. 12-15 showed that no markup percentage was used in calculating the sales-tax assessment; instead the sales-tax assessment was based on tab 2 of Exhibit [RFA-]D.  Further, the MDOR asserts that the auditor utilized these reports during the audit and that the average calculated from these reports to fill in any missing days was derived

_____

[10] CRIND constitutes fuel sales at the gas pump by credit and debit card transactions.

from the non-fuel-sales amounts only.

¶17. Because Hayaf has offered only bare assertions that the audit incorrectly included the CRIND transactions, we find the audit papers must be assumed trustworthy and correct under applicable law. *See supra* n.6. As discussed, when inadequate records are kept by the taxpayer, the findings of MDOR are presumed to be prima facie correct. *See United Roofing,* 2020 WL 7221730, at *7-8 (¶¶25-29) (interpreting section 27-65-37(1)). The presumption is sufficient to satisfy the MDOR's burden for purposes of summary judgment unless overcome by the taxpayer. *Id*. Hayaf's mere "belief" that the audit is incorrect is not sufficient to overcome the prima facie presumption of correctness. *See id.*

¶18. Moreover, although Hayaf argued at the hearing that its accountant would testify at trial and "walk through every one of these CRIND calculations and show wh[y] the numbers that [were] reported on the sales tax were exactly right," Hayaf provided no evidence—such as an affidavit by its accountant—in support of this argument. Pursuant to section 27-77-7(5) (Rev. 2017), it was Hayaf's burden to prove by a preponderance of the evidence that it was entitled to relief. *See also United Roofing*, 2020 WL 7221730, at *7 (¶28) (finding that once the MDOR has satisfied its "initial burden of persuasion for summary judgment," the burden then shifts to the taxpayer "to produce significant probative evidence of a genuine issue for trial" (internal quotation marks omitted)). Accordingly, we find the chancery court properly concluded that Hayaf failed to "substantiate[] the claims regarding the CRIND transactions such that a genuine issue of material fact is created."

### III. Penalty and Interest

¶19. Hayaf claims that the MDOR offered no admissible evidence to support its assessment of penalties and interest under Mississippi Code Annotated section 27-65-39 (Supp. 2015). Hayaf also notes that the statute's language is discretionary with regard to the assessment of damages, using the word "may." Although this issue was raised at the hearing on the motion for summary judgment, the chancery court made no specific findings with regard to penalties and interest in its order.[11]

¶20. Section 27-65-39 provides:

> If any part of the deficient or delinquent tax is due to negligence or failure to comply with the provisions of this chapter or authorized rules and regulations promulgated under the provisions of this chapter without intent to defraud, *there may be added as damages* ten percent (10%) of the total amount of deficiency or delinquency in the tax, or interest at the rate of one percent (1%) per month, except as otherwise provided in this section, or both, from the date such tax was due until paid, and the tax, *damages and interest shall become payable upon notice and demand by the commissioner*.

(Emphasis added). Thus, the statute clearly provides that where a delinquency is due to the taxpayer's negligence or failure to comply with the provisions of controlling statutes and rules, the commissioner has the discretion to impose damages of ten percent (10%) of the total amount of deficiency or delinquency in the tax. Furthermore, under Mississippi Code Annotated section 27-7-51(6)(c) (Rev. 2017), the commissioner has discretion to assess an

---

[11] Hayaf additionally argued to the chancery court that the failure to provide sufficient proof for the assessment of interest was arbitrary and capricious and may have violated constitutional due process rights, but this argument was not raised on appeal.

14

interest of 7% per month from the date the tax was due until it is paid. As argued by the MDOR's counsel at the motion hearing:

> Yes, the department has the discretion. But, in this case, not all the records were provided. Nothing is provided to substantiate any arguments they had with it. It went on for a period of time. The assessment has still not been paid. The state is not -- is out of the money and therefore interest at any rate is worthy and penalty for not keeping their records right.

Given the statutory language granting the commissioner the discretion to impose penalties and interest as damages, we find no error in the chancery court's decision to uphold the MDOR's tax assessments, which included penalties and interest.

### IV.    Individual Income Taxes

¶21.    Saleh asserts the following assignments of error with regard to the MDOR's assessments of individual income taxes:

> (1) The taxpayers "had all records necessary to prove their income, deductions, exceptions, and credit in order to determine their Mississippi income tax liability";
>
> (2) Saleh did not refuse to provide the documentation requested by MDOR during their audit, nor did they delay in doing so;[12]
>
> (3) the auditor made no indication that the taxpayers refused or delayed in providing documentation and, therefore, the individual tax assessments "are not prima facie correct"; and
>
> (4) the notices and audit work papers are insufficient to carry the MDOR's burden to show an absence in the record for a essential element of Saleh's

---

[12] *See* Miss. Code Ann. § 27-7-49(3) (Rev. 2013) (providing that only refusal or delay by the taxpayer in providing income-tax documentation for examination shall result in a prima facie assessment).

15

case.

The failure to maintain accurate and complete records caused a delay in providing documentation to the auditors; these records would have been used—alongside their wages, salaries, tips, and previously stated K-1 income[13]—to assess the tax liability of the individuals given the passthrough taxation of the LLP. Saleh continually claimed that they had additional documents necessary for a correct calculation of the income taxes owed; yet, no such documents were produced during the 331-day audit. And when given an opportunity to do so by the Board of Review, Saleh still offered no evidence to rebut the factual assertions made by the MDOR. If such documents exist, the lack of production can only be viewed as a refusal or delay within the meaning of Mississippi Code Annotated section 27-7-49(3).

¶22. The additional income discovered as a result of the increased business sales found in the audit flowed through to Saleh's individual tax returns, as intended by Mississippi Code Annotated section 27-7-25 (Rev. 2013), and was displayed as an increase in K-1 income on the audit papers. To the extent the sales-tax audits are correct, we determine that the individual income tax audits are correct as well and that these findings are entitled to a presumption of prima facie correctness. *See In re Blalock*, 537 B.R. 284, 304 (Bankr. S.D. Miss. 2015) (holding "that the presumption of correctness applies to the [i]ncome [t]ax

---

[13] K-1 income is each partner's share of the partnership's earnings, losses, deductions, and credits. Any increase in earnings to the partnership shown in the audit would also become an increase in income to the partners through the distributions.

[a]ssessments as well as the [s]ales [t]ax [a]ssessments") (citing Miss. Code Ann. § 27-7-53(2)). Once that presumption arose, the taxpayers bore the burden of proof to show that a genuine dispute existed regarding the correctness of the assessment; they failed to do so. We, therefore, find no merit to Saleh's claims on this issue.

¶23. Accordingly, we find that the chancery court did not err in granting the MDOR's motion for summary judgment and affirm.

¶24. **AFFIRMED.**

**CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**