PRATHER, Justice,
for the Court:
At issue in this appeal is the quantum and quality of evidence needed by a taxpayer to overcome the State Tax Commission’s deficiency assessment, which assessment is presumed to be prima facie correct under the Mississippi statute. This appeal arises from an order of the Chancery Court of Newton County requiring the State Tax Commission to refund $5,577.45 plus interest, representing part of the assessment of additional sales taxes on businesses owned by Leon Bounds. On appeal, the State Tax Commission assigns the following as error:
(1) The chancery court erred by ruling that sales taxes should be refunded by the Commission to the taxpayer, Mr. Leon Bounds, where Mr. Bounds failed to meet the burden of proof necessary to overcome the Tax Commission’s assessments which, pursuant to Miss.Code Ann. § 27-65-37, are deemed prima facie correct.
(2) The chancery court erred in allowing the introduction of Plaintiff’s Exhibit No. 1 to the testimony of his accountant since the document was not produced in pretrial discovery as required by Rules 33, 34 and 26(f) of the Mississippi Rules of Civil Procedure and Miss.Code Ann. § 13-l-226(e).
Bounds assigns the following as error on cross-appeal:
(1) The chancery court was manifestly in error in only ordering the appellant to reimburse appellee a portion of the sales taxes improperly assessed by appellant against appellee’s businesses known as Leon’s Place and Handy Stop.
I.
Leon Bounds owned three businesses during the audit period: Bounds Oil Company, a wholesale gasoline and diesel business, and Leon’s Place and Handy Stop, both convenience stores.
In October, 1984, James Weeks, a field auditor of the State Tax Commission, conducted an audit of Bounds’ three businesses for an audit period of January, 1982 through September, 1984. However, Leon’s Place did not commence operation until January 8, 1983.
Weeks found that Bounds determined the amount of sales taxes due by utilizing bank statements of each business. Bounds computed total sales by adding total monthly deposits, estimated cash payouts to employees and vendors, and estimated owner cash withdrawals. Weeks concluded that Bounds had underreported gross sales from all his businesses and made a deficiency assessment of $14,513.73 for Bounds Oil Company, $5,127.22 for Leon’s Place, and $5,212.15 for Handy Stop. The Mississippi State Commission’s Board of Review upheld Weeks’ conclusions, except that the sales tax liability on Leon’s Place was reduced by one-half from $5,127.22 to $2,563.61.
Bounds paid his assessment and filed his original complaint in the Chancery Court of Newton County on August 23,1985, for the *824 recovery of allegedly improperly assessed sales taxes on the three businesses.
The case was tried on May 1 and May 5, 1986, and on June 9, 1986, the chancery court ordered the Commission to repay Bounds $3,474.77 in sales taxes improperly assessed on Handy Stop and $2,102.68 sales taxes improperly assessed on Leon’s Place, for a total of $5,577.45. The chancery court affirmed in full the assessment on Bounds Oil Company, and that part of the cross-appeal regarding Bounds Oil Company has been abandoned by Bounds as to that one business. The State Tax Commission appeals the reduction of the assessment on the two convenience stores, and Bounds cross-appeals the failure to refund totally all deficiency assessments on both convenience stores.
II.
WAS THE CHANCERY COURT IN ERROR IN ITS DETERMINATION OF SALES TAXES ON HANDY STOP AND LEON’S PLACE?
At the Handy Stop and Leon’s Place businesses, the only records kept by Bounds were purchase invoices and bank records. There were no records reflecting actual sales by Handy Stop or Leon’s Place, no sales invoices, no record of cash withdrawals, and no record of actual markups on the store’s inventories. Bounds testified that he had kept records showing gross receipts, but that by reason of their inadequacy, he had not produced them for the Commission. He also refused to state that his method of determining the tax was more accurate than the Commission’s.
To support his method of determining total sales, Bounds relies upon the auditor’s admission that, “[i]f you took [Bounds’] daily deposits, considering he deposited every money he takes in and that only, in his business bank account, and add to that the cash payouts plus the credit card sales ..., [that would] be his daily sales for that particular day.” Bounds seeks further support in Weeks’ statement that all the Commission requires a taxpayer to do is to keep up with his true daily sales record.
A.
HANDY STOP
Weeks, the auditor, determined that taxes on Handy Stop were due and unpaid. Weeks found that the business expenses plus estimated cash payouts to vendors, employees, and Bounds, including purchase invoices, exceeded total reported sales, and he thus concluded that total receipts had been under-reported. Weeks concluded that minimum unreported sales were $52,-689.30, as follows:
Reported Sales Reported Expenses Minimum Unreported Sales
1982 $251,175.80 $264,260.48 ($13,084.68)
1983 205,113.60 227,355.65 ($22,242.05)
1984 179,826.17 197,188.74 ($17,362.57)
Minimum Unreported Sales $52,689.30
In the absence of records reflecting actual cash payouts, actual cash withdrawals or daily sales, the Commission’s auditor took Bounds’ purchase invoices and applied a markup. The basis of the markups was that percentage used in the store at the time of the audit, verified by Bounds’ wife.
The State Tax Commission utilized a final markup on groceries of 24 percent and gasoline of 8 percent.
B.
LEON’S PLACE
Weeks determined that taxes on Leon’s Place were due and unpaid and arrived at that determination on the same markup basis as with the Handy Stop business.
After a conversation with Bounds’ accountant, Charlie Orr, Weeks found that Bounds’ income tax return reflected $24,-883.70 more receipts on Leon’s Place than did the sales tax returns. On his sales tax returns, Bounds failed to report cash payments on a note payable to Newton County Bank, totaling $18,883.70, and cash on hand totaling $6,000.00. Again, in the absence of any records reflecting actual cash payouts, actual cash withdrawals or daily sales, the auditor took Bounds’ purchase invoices and applied a markup using as a *825 basis the markups at the store at the time of the audit.
Although Bounds admitted that he was not sure exactly how much his markups were, he testified that he had no markups at all at Leon’s Place, but was selling goods at cost or below. The Board of Review reduced the assessment on Leon’s Place due to Bounds’ explanation that he had just started the business in January, 1983 and that he had used an extremely low markup as an inducement to customers. Thus, the Board of Review’s final markup figures for Leon’s Place were 3.7 percent in 1983 and 5.6 percent in 1984 for gasoline, and 19.3 percent in 1983 and 20.63 percent in 1984 for groceries. The Board of Review reduced the tax deficiency by one-half to $2,563.61.
C.
CHANCERY COURT
The assessments were paid by Bounds, and suit was filed in chancery court under authority of Miss.Code Ann. § 27-65-47 (1972). The chancellor stated:
The evidence and testimony do in fact reveal that total sales were under-reported for these two businesses and it can be reasonably concluded that the reason therefor is that the taxpayer underestimated cash withdrawals and may very well be unaware of many of them....
The court determined from the evidence and testimony that the actual markups in effect during the audit period could not have amounted to more than one-third of the minimum markup which Weeks applied to the Handy Stop. Thus, the court ordered a refund as to Handy Stop in the amount of $3,474.77. As to Leon’s Place, the court considered the facts that Bounds applied only small markups in his apparently successful effort to build up the business. Additionally, the taxpayer proved that the accountant erred in showing an $18,000 cash withdrawal from Leon’s Place when no money was actually withdrawn. The court concluded that the markup should not have exceeded one-fifth of the markup actually used by Weeks. Thus, the court required a refund as to Leon’s Place in the amount of $2,102.68.
III.
DID THE TAXPAYER MEET HIS BURDEN OF PROOF TO OVERCOME THE STATUTORY PRESUMPTION THAT THE COMMISSION’S ASSESSMENTS WERE PRIMA FACIE CORRECT?
The applicable statute reads in part as follows:
If adequate records of the gross income or gross proceeds of sales are not maintained or invoices preserved as provided herein, or if an audit of the records of a taxpayer, or any return filed by him, or any other information discloses that taxes are due and unpaid, the commissioner shall make assessments of taxes, damages, and interest from any information available, which shall be prima facie correct_
Miss.Code Ann. § 27-65-37 (1972). Note that Miss.Code Ann. § 27-65-43 (1972), requires the taxpayer to keep records of gross sales. Section 27-65-37 comports with Mississippi Rule of Evidence 301, which provides:
In all civil actions and proceedings not otherwise provided for by act of the Legislature or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.
The record undisputedly supports the fact that adequate records of gross sales were not maintained by Bounds. Sales invoices were not maintained, and cash payouts were only estimated. Therefore, any calculation of gross sales was necessarily an estimate only.
The lack of adequate records alone gives rise to the presumption that the Commissioner’s assessments are prima facie correct. However, this case has the added *826 support of the Commission auditor’s determination that taxes were due and unpaid because Bounds had omitted certain cash payouts in his determination of gross sales for the two convenience stores. Although the $18,000 withdrawal from Leon’s Place was in error, the error was made by the taxpayer himself on the income tax return which was used by the Commission.
In order for the Commissioner’s assessments to be prima facie correct, the Commission’s auditor must make them “from any information available,” Miss.Code Ann. § 27-65-37 (1972), not from the best information available, as suggested by Bounds. Therefore, the Commission was obviously not required to interview the taxpayer, his employees, or his friends in determining the amount of the markups to be applied to the figures obtained by the Commission from Bounds’ purchase invoices. Thus, it is this Court’s opinion that the chancellor was correct in determining that the Commission’s assessments were prima facie correct.
Having established that the Commission’s assessments are prima facie correct, the statute is no longer applicable except for its implication that, as upon the establishment of other presumptions, the opposing party, plaintiff herein, may rebut the case made out by the other party. In conjunction with certain of his records (purchase invoices), Bounds chose to rebut the presumption, by use of his testimony, that is, his undocumented recollection, that the actual markups were much lower than those used by the Commission.
There is very little caselaw on what specifically will overcome a Tax Commission’s prima facie case. Middlebrook v. Mississippi State Tax Comm., 387 So.2d 726 (Miss.1980) involved an income tax statute which required the Commission to use the “best information available” for its determination to be prima facie correct. In Mid-dlebrook, the Commission did not have to subpoena the taxpayer’s business records in order to raise the presumption. To apply Middlebrook in such a way as to preclude a taxpayer from rebutting the presumption with any information other than that used by the Commission would, at least in a case such as this, establish the presumption as an irrebuttable one. Such is not the intent of the statute, as evidenced by use of the words “prima facie.”
The Commission also cited an Illinois appellate case, Howard Worthington, Inc. v. Illinois Department of Revenue, 96 Ill.App.3d 1132, 52 Ill.Dec. 167, 421 N.E.2d 1030 (1981), and a quote therein from Masini v. Department of Revenue, 60 Ill.App.3d 11, 17 Ill.Dec. 325, 376 N.E.2d 324 (1978). Both cases stated the Illinois rule that in order to overcome the presumption of validity of the Department’s corrected returns, the taxpayer must produce competent evidence, identified with or supported by its books or records at the hearing. 60 Ill.App.3d at 15, 17 Ill.Dec. at 328, 376 N.E.2d at 327; 96 Ill.App.3d at 1134, 52 Ill.Dec. at 169, 421 N.E.2d at 1032. In Worthington, the taxpayer produced only generalized testimony and conclusions and no books or records. In Masini, the taxpayer offered no testimony or evidence at all. Furthermore, the Illinois Supreme Court has held that a proposed assessment of an occupation tax is prima facie correct, but where the only competent evidence is the taxpayer’s books and his own testimony, which is not so inconsistent or improbable, in itself, as to be unworthy of belief, the prima facie case is overcome, and the burden shifts to the Department of Finance to prove its case by competent evidence. J.H. Walters & Co. v. Department of Revenue, 44 Ill.2d 95, 105, 254 N.E.2d 485, 491 (1969); Quincy Trading Post Inc. v. Department of Revenue, 12 Ill.App.3rd 725, 729-30, 298 N.E.2d 789, 793 (1973). See Hawes v. LeCraw, 121 Ga.App. 532, 174 S.E.2d 382 (1970). However, the plaintiff may not prevail by merely saying his own return was correct or by merely submitting the applicable forms. 12 Ill.App.3d at 730-31, 298 N.E.2d at 793 (quoted in Masini, 60 Ill.App.3d at 15-16, 17 Ill.Dec. at 329, 376 N.E.2d at 328).
A case with a similar issue was recently decided by the Supreme Court in Tennessee, namely Stratton v. Johnson, 707 S.W.2d 865 (Tenn.1986). The case involved a *827 taxpayer who failed to report sales taxes on illegal sales of liquor. In the absence of any taxpayer records reflecting actual sales, the Tennessee Commissioner of Revenue used the liquor inventory found at the taxpayer’s business and multiplied the inventory by an average price charged for a drink of liquor in east Tennessee. In affirming the assessment, the Tennessee Supreme Court stated, in part, the following:
Moreover, this Court will not reward, directly or indirectly, the failure of a person to maintain adequate records of illegal sales of liquor by setting aside an assessment of taxes on such sales because the Commissioner based his tax assessment on an estimate. Not only does evidence support the assessment made by the Commissioner, but Plaintiff has not shown how the method of assessment was erroneous, except to allege that it was not based on any records or other evidence and was therefore arbitrary. ...
Id. at 867-68.
The Tennessee Supreme Court further stated the following:
In conclusion, Plaintiff
“has failed to produce an audit, actual books and records, or summaries thereof, or other evidence to establish that it owes less taxes than the amount assessed by the Department of Revenue. The taxpayer has done no more than to make allegations to the effect that the State’s audit method was incorrect, inapplicable or constitutes only an estimate. ...”
Id. at 868 (emphasis added) [quoting Edmondson Management Service, Inc. v. Woods, 603 S.W.2d 716, 718 (Tenn.1980) ].
In the instant case, once the Commission determined that total sales had been un-derreported, a markup on Mr. Bounds’ purchase invoices was utilized to determine total sales. The markups used by the Commission were based on the actual markups of various goods in Mr. Bounds’ stores at the time of the audit, with a further reduction in markups being allowed for Leon’s Place.
Absent adequate records, the Commission could have used any available information, such as an average markup of all stores in the area. The Commission used, however, the best information available, which was the markups Mr. Bounds was known to be using.
The only evidence introduced by Mr. Bounds was his own undocumented recollection of the prices and markups of various goods he offered for sale at the stores in the month of March, 1983, although Bounds was testifying in May of 1986, approximately three years later. The taxpayer’s uncorroborated testimony that the assessments were excessive does not fulfill the taxpayer’s burden of proof. Pursuant to Miss.Code Ann. § 27-65-37, the Commission may use “any information available” in making its assessment. In this case the Commission used as a basis the best and most reliable information available when making the audit namely, the markups in use by Mr. Bounds at the time of the audit. A taxpayer’s uncorroborated testimony that he sold goods at or below costs, coupled with a failure to maintain adequate records reflecting true sales, does not overcome the Commission’s prima facie correct assessment and, without other proof, does not suffice.
It should be noted by the Court that the taxpayer’s accountant did testify as corroborating Bounds’ statements. However, this testimony also fails because the accountant based his testimony on Bounds’ representations and recollections of his markups during the audit period. The reliability of this testimony is questionable.
On the first day of the trial Mr. Bounds testified that he had kept records showing gross receipts but that they were not good records and that he had not produced them for the Commission. He further testified that he was not stating that his method of determining the tax was more accurate than the Commission’s and that he was not sure how much his markups were. Lastly, he testified that his markups at Leon’s Place were lower than his markups at the Handy Stop and that he had no markups at all at Leon’s Place, but was selling goods at cost or below.
*828 Following a four-day continuance of the trial by the Court, Mr. Dan Lee, a certified public accountant, testified for Mr. Bounds. Mr. Lee testified that, during the four day continuance, he recalculated the Commission’s assessments based on Mr. Bounds’ recollection of his own markups using the month of March, 1983 as a basis.
This Court therefore concludes that the taxpayer’s proof was so inconsistent or improbable as to be unworthy of belief, and that the taxpayer did not overcome by competent evidence the State Tax Commission’s prima facie case. Further, the chancellor’s finding of a two-thirds and a four-fifths reduction of the deficiency assessment for Handy Stop and Leon’s Place, respectively, was unsupported as to any basis therefor by competent evidence or by accurate computations and was, therefore, manifestly in error.
The Court, therefore, reverses the judgment of the Chancery Court of Newton County ordering the Mississippi Tax Commission to refund the deficiency assessment of taxes paid by Leon Bounds, doing business as Leon’s Place, and Leon Bounds, doing business as Handy Stop, and renders.
IV.
The Court does not address the second assignment of error regarding the failure of Bounds to supplement his interrogatories to reflect new subject matter of an expert witness under Mississippi Rule of Civil Procedure 26(f)(1) in view of the disposition of the first assignment of error.
REVERSED AND RENDERED ON DIRECT APPEAL; AFFIRMED ON CROSS-APPEAL.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.