# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2021-SA-00881-SCT

*SALTWATER SPORTSMAN OUTFITTERS, LLC*

*v.*

*MISSISSIPPI DEPARTMENT OF REVENUE*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/29/2021 |
| TRIAL JUDGE: | HON. CARTER O. BISE |
| TRIAL COURT ATTORNEYS: | BRIAN CHRISTOPHER WHITMAN |
| | JASON BROOKS PURVIS |
| | SETH CHRISTOPHER HALL |
| | MORTON WARD SMITH |
| | TYLER DOUGLAS JORDAN |
| | WILLIAM JAMES DUKES |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JASON BROOKS PURVIS |
| | BRIAN CHRISTOPHER WHITMAN |
| ATTORNEYS FOR APPELLEE: | MORTON WARD SMITH |
| | WILLIAM JAMES DUKES |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 05/25/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., ISHEE AND GRIFFIS, JJ.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1. This is an appeal from a summary judgment in favor of the Mississippi Department of Revenue (MDOR) in a dispute over unpaid sales taxes. The taxpayer, Saltwater Sportsman Outfitters, LLC (SSO), is a one-man operation that sells clothing online and at trade shows, conventions, and other events. SSO kept few records of what it had sold or where, though its sole member testified that most of its sales occurred out of state. After an

audit, MDOR assessed additional sales tax liability, ultimately settling on about $80,000 based on the disparity between SSO's wholesale purchases and the sales taxes it had paid in Mississippi and other states. MDOR's assessment was appealed to the circuit court, which granted summary judgment in favor of MDOR. SSO appeals.

¶2. By statute, SSO's failure to keep adequate records rendered MDOR's assessment presumptively correct. We find no merit to SSO's various arguments on appeal, including that the promoters of the events at which SSO sold were the true parties liable for the taxable sales. We therefore affirm the circuit court's grant of summary judgment.

## FACTS

¶3. Most of the material facts are uncontested. SSO was established and first registered to do business in Mississippi in May 2013. SSO was engaged in the business of selling apparel, primarily at trade shows and events.

¶4. MDOR began a sales tax audit of SSO in May 2018. Since SSO had few records, MDOR performed a markup audit. MDOR's auditor compared the wholesale price SSO had paid for its merchandise with the retail prices advertised by SSO to calculate SSO's average markup for retail sales, which turned out to be approximately 115 percent. MDOR then applied that markup to all of SSO's wholesale purchases, which were documented, to calculate SSO's total gross sales proceeds. When documentation could be recovered, MDOR subtracted the sales taxes SSO had remitted to MDOR, event promoters, and other states. MDOR also ultimately gave SSO credit for sales taxes SSO had paid on some of its wholesale purchases.

2

## ISSUES

¶5.     SSO enumerates six issues as follows:

1.      Whether the trial court erred in finding that Saltwater Sportsman Outfitters, LLC ("SSO") was liable for sales tax collected and remitted at promoted events.

2.      Whether the trial court erred in finding that MDOR was not estopped from arguing that SSO is the "seller"; that the promoter was not the seller; that sales by vendors are not treated as wholesale transactions; and that promoters are not responsible for all sales collected at promoted events.

3.      Whether the trial court erred in finding that SSO failed to remit sales taxes to event promoters.

4.      Whether the trial court erred in finding that SSO was required to maintain documentation of every sale at promoted events.

5.      Whether the trial court erred in finding that MDOR's "workpapers" were prima facie correct.

6.      Whether the trial court erred in finding that MDOR's markup analysis was appropriate.

## STANDARD OF REVIEW

¶6.     This Court employs a de novo standard of review when considering a lower court's grant of summary judgment. *Short v. Columbus Rubber & Gasket Co.*, 535 So. 2d 61, 63 (Miss. 1988). "The evidence is viewed in the light most favorable to the party opposing the motion. The moving party has the burden of demonstrating no genuine issue of material fact exists." *Kinney v. S. Miss. Plan. & Dev. Dist., Inc.*, 202 So. 3d 187, 192 (Miss. 2016) (citation omitted). "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

3

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id.* (citation omitted). "Because the movant must be entitled to a judgment as a matter of law, a summary-judgment motion is usually limited to questions of law, which this Court reviews de novo." *Bennett v. Highland Park Apartments, LLC*, 170 So. 3d 450, 452 (Miss. 2015).

¶7. "[T]his Court's review of the motion for summary judgment is just as if this Court were sitting as the circuit judge. No deference is given to the circuit court's decisions. This Court must look at the same pleadings and evidentiary material that the trial court considered." *Miss. Hub, LLC v. Baldwin*, 358 So. 3d 305, 308 (Miss. 2023) (citation omitted).

## DISCUSSION

**1. Whether the trial court erred by finding that SSO was liable for sales tax collected and remitted at promoted events.**

¶8. In its first issue, SSO contends that the Mississippi Code and the MDOR regulations place the liability for the sales tax for SSO's sales on the promoters of the events at which it sold, rather than SSO itself. Thus, SSO argues it was not liable for the taxes on its sales.

¶9. Mississippi Code Section 27-65-17(1)(a) (Rev. 2017) provides in relevant part:

> Except as otherwise provided in this section, upon every person engaging or continuing within this state in the business of selling any tangible personal property whatsoever there is hereby levied, assessed and shall be collected a tax equal to seven percent (7%) of the gross proceeds of the retail sales of the business.

Section 27-65-3(c) (Rev. 2017) goes on to define *person*:

4

"Person" means and includes any individual, firm, copartnership, joint venture, association, corporation, promoter of a temporary event, estate, trust or other group or combination acting as a unit, and includes the plural as well as the singular in number. "Person" shall include husband or wife, or both, where joint benefits are derived from the operation of a business taxed hereunder. "Person" shall also include any state, county, municipal or other agency or association engaging in a business taxable under this chapter.

SSO notes that section 27-65-3(c) was amended in 2005 to expressly include "promoter of a temporary event" in the definition of persons subject to sales tax liability. And it points out that the statutory definition of a "person" subject to sales tax liability does not specifically include vendors at temporary events.

¶10.    SSO then points to MDOR regulations that define promoted events as follows:

Promoted Events include, but are not limited to, community festivals, craft shows, seasonal shows, music festivals, and other similar events. These events may include multiple vendors selling tangible personal property, including food or drink.

36 Miss. Admin. Code Pt. 4, R. 13.05, § 202 (rev'd eff. Aug. 15 2008), https://www.dor.ms.gov/sites/default/files/Laws%26Regs/Part%204.pdf.   The regulations go on to provide:

The owner/promoter/operator of a flea market, antique mall or promoted event is the seller and is responsible for collecting and remitting the sales tax collected by dealers, salespersons or individuals selling at such events. Any vendor who holds a retail sales tax permit should not report tax from an event under his/her number. All taxes collected from these establishments or events must be reported by the owner/promoter/operator.

*Id.* § 203.

¶11.    Also found in the record is an MDOR "Instructions to Taxpayers—Promoted Event" pamphlet that appears to refer to the promoter as the taxpayer. And there is also a 2015

memo from MDOR addressed to the "Promoters of Fairs, Flea Markets, Promoted Events, Etc." that states that the promoters are "responsible for collecting the sales tax on all sales made by dealers, salespersons, independent sellers, or individuals selling at such events" and remitting it to MDOR. The memo lays out the process for collecting sales tax—the exhibitors are to collect the sales tax and remit it to the promoter, along with a form that is to be signed by the vendor under penalty of perjury. The form states that, for vendors already registered to collect sales tax, "the sales reported on this form should be reported as wholesale sales on your normal sales tax return filed for the period that this event occurs within. This will allow the sales tax on these sales to be reported and remitted one time under the promoter's tax account." The form also advises that the records of the vendors are "subject to audit at any time for the purpose of confirming information provided on this form."

¶12.   SSO contends that the statutes, regulations, and MDOR publications aggregate to show that the promoter, rather than the vendor, was liable for the sales tax for SSO's sales at the various events at which it sold. As noted above, MDOR was able to recover some documentation that SSO had paid sales tax to certain promoters recalled by SSO, but SSO did not preserve records of what it had sold or where; and some of those forms that were found showed that substantially less sales tax was paid than should have been based on credit card transaction records. MDOR gave credit to SSO for all the sales taxes it could show it had paid, in Mississippi and to other states.

6

¶13. But, as MDOR points out in its brief, statutes are controlling over regulations; and this Court has recently held that the agency's interpretation of a statute are no longer given deferential treatment. *See **HWCC-Tunica, Inc. v. Miss. Dep't of Revenue***, 296 So. 3d 668, 677 (Miss. 2020). Even if the regulations contradicted the statute, the statute controls, and courts alone interpret statutes. ***Id.***

¶14. SSO is clearly a "person engaging or continuing within this state in the business of selling any tangible personal property" and is therefore required to pay the tax on its sales by Section 27-65-17(1)(a). SSO is not absolved of that responsibility by the fact that the event promoters may have been liable for some of the taxes as well. Indeed, Section 27-65-3(c) explicitly acknowledges that joint liability for sales tax may exist under certain circumstances—*person* can include both a husband and wife when both jointly benefit from a business. Under a plain reading of the statute, both SSO and the event promoters were liable for the sales tax. The regulations and various forms and memorandums produced by MDOR simply lay out the procedure by which the tax is to be collected and remitted to MDOR; they do not (and cannot) absolve SSO of its statutory obligation to pay the tax on its sales.

    **2.    Whether the trial court erred by finding that MDOR was not estopped from arguing that SSO is the seller; that the promoter was not the seller; that sales by vendors are not treated as wholesale transactions; and that promoters are not responsible for all sales collected at promoted events.**

¶15. Next, SSO argues that MDOR should be equitably estopped from collecting the tax due to SSO's reliance on its regulations and guidance. "The State, its counties, subdivisions

and municipalities may be equitably estopped under the proper circumstances." ***Bd. of Trs. of Monroe Cnty. Bd. of Educ. v. Rye***, 521 So. 2d 900, 908 (Miss. 1988) (citations omitted).

¶16. We find no merit to this issue. As discussed above, there is no reasonable interpretation of the statutes and MDOR regulations under which SSO could claim to have been misled into believing it had no obligation to pay the sales tax. Indeed, the form SSO was supposed to execute at each sponsored event stated, in bold letters immediately above the fill-in-the-blank part of the form, that SSO's "records are subject to audit at any time for the purpose of confirming information provided on this form." SSO kept no records.

¶17. Moreover, the records that could be reconstructed from credit-card transactions appeared to show that SSO repeatedly underreported its sales at promoted events. "The clean hands doctrine prevents a complaining party from obtaining equitable relief in court when he is guilty of willful misconduct in the transaction at issue." ***Bailey v. Bailey***, 724 So. 2d 335, 337 (Miss. 1998). Thus, we cannot find error in the trial court's denying SSO equitable relief.

> **3. Whether the trial court erred by finding that SSO failed to remit sales taxes to event promoters.**

¶18. Next, SSO contends that the trial court should have given it the benefit of the presumption in Mississippi Code Section 27-65-31 (Rev. 2017), which states that, for the purposes of Section 27-65-31, "there shall be a presumption that the taxpayer collected the tax from the customer or purchaser." According to SSO, it was the "customer" of the event promoters and thus the court was required to presume that it had paid the sales taxes to the taxpayers, the promoters. SSO thus attempts to turn the presumption that it collected sales

8

tax on behalf of the state on its head, arguing that the presumption is actually that the promoters collected the sales tax from SSO.

¶19. This argument appears to be based entirely on SSO's novel, contrived reading of Section 27-65-31. SSO offers no other supporting authority.

¶20. The only coherent reading of Section 27-65-31 is that the customer/purchaser is the customer who is purchasing the items from SSO. Thus under Section 27-65-31, SSO was presumed to have collected the sales taxes.

> **4. Whether the trial court erred by finding that SSO was required to maintain documentation of every sale at promoted events.**

¶21. Mississippi Code Section 27-65-43 (Rev. 2017) provides:

> It shall be the duty of every person taxable under this chapter to keep and preserve for a period of three (3) years adequate records of the gross income, gross receipts or gross proceeds of sales of the business, including all invoices of merchandise purchased, all bank statements and cancelled checks, and all other books or accounts as may be necessary to determine the amount of tax for which he is liable. Said records shall be adequate in substance to conform with the provisions of this chapter and the regulations promulgated by the commissioner, and all of such records shall be written in the English language. All records shall be open for examination, at any time, by the commissioner or his duly authorized agent.

> The commissioner may require any information or records from computer information systems on media common to those systems. Taxpayers' records may be sampled for audit purposes at the discretion of the commissioner and any assessment rendered as a result of same shall be considered prima facie correct.

> The records provided for in this section shall be kept at the taxpayer's principal place of business within this state, and failure to keep and allow examination of such records shall subject the taxpayer to all the penalties of Section 27-65-85 of this chapter.

Section 27-65-43 thus requires a sales-tax payer to keep records "as may be necessary to determine the amount of tax for which he is liable."

¶22. SSO's argument on this issue depends on its prior contention that the promoters were the only taxpayers in SSO's sales at promoted events. Thus, SSO contends that it did not have to keep any records related to the sales it made at promoted events. This argument is without merit, as we have already found that SSO was also a taxpayer under the statute. Section 27-65-43 thus required SSO to keep records. It failed to do so.

**5. Whether the trial court erred by finding that MDOR's "workpapers" were prima facie correct.**

¶23. Mississippi Code Section 27-65-37(1) (Rev. 2017) provides in relevant part that

> If adequate records of the gross income or gross proceeds of sales are not maintained or invoices preserved as provided herein, or if an audit of the records of a taxpayer, or any return filed by him, or any other information discloses that taxes are due and unpaid, the commissioner shall make assessments of taxes, damages, and interest from any information available, which shall be prima facie correct.

¶24. MDOR originally audited SSO and produced an assessment from the commissioner, as outlined in Section 27-65-37(1), in the amount of $153,769. Over the course of this litigation, MDOR acquired evidence showing that SSO had paid more sales taxes than originally believed. Much of this was based on documentation provided by SSO or uncovered by MDOR based on information provided to it by SSO after the initial audit. MDOR then revised its position, which was articulated by auditor John Rodgers in "workpapers" filed with the court. MDOR gave SSO credit for additional taxes paid,

10

eventually arriving at a figure of $78,409 outstanding—most of the difference was a credit for sales taxes SSO had paid to its suppliers.

¶25.    SSO essentially argues on appeal that the trial court was required to throw the baby out with the bathwater; it contends that because MDOR has reduced its assessment since it was made by the commissioner, the assessment is no longer presumed to be correct.

¶26.    The statute states that the MDOR assessment was prima facie correct.  Prima facie evidence has been defined by Black's Law Dictionary as evidence "such as will suffice until contradicted and overcome by other evidence . . . [a] case which has proceeded upon sufficient proof to that stage where it will support [a] finding if evidence to the contrary is disregarded."  *Natchez Elec. & Supply Co. v. Johnson*, 968 So. 2d 358, 360 (Miss. 2007) (alterations in original) (internal quotation mark omitted) (quoting *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982)).  "A prima facie case is made by the proponent solely on his proof.  When this burden of proof has been met, the burden of going forward shifts to the contestants to overcome the prima facie case."  *Id.* (citing *Smith v. Averill (In re Est. of Smith)*, 722 So. 2d 606, 611 (Miss. 1998)).  MDOR has since admitted the assessment was subsequently shown to be incorrect in certain specific respects, i.e., SSO was entitled to credit for sales taxes that SSO was later discovered to have paid.  But that admission does not render the assessment invalid; the core of the assessment—the reconstruction of SSO's taxable sales by reference to its wholesale purchases and retail markups—remained unchanged.  Thus, while SSO is right that the assessment, rather than the workpapers, is presumed to be correct, the workpapers are just

11

the original assessment with certain revisions favorable to SSO. The workpapers represent MDOR's concessions in this litigation; SSO does not disagree with the credits it has been given vis-a-vis the original assessment.

¶27. The assessment that SSO owed MDOR back taxes was not "overcome" by MDOR's admission that SSO had paid more taxes than originally believed. We find no merit to this issue.

### 6. Whether the trial court erred by finding that MDOR's markup analysis was appropriate.

¶28. Finally, SSO contends the MDOR assessment should have not have been presumed correct because SSO did not have an obligation to maintain records under Section 27-65-37(1) because the promoters, not it, were responsible for the taxes. This argument has already been addressed and is without merit.

¶29. Under the umbrella of this issue, SSO also contends that the assessment was invalid because MDOR admitted it had retained copies of some documentation provided to it by event promoters. MDOR's representative testified that, although not required to do so unless audited, some promoters had submitted documentation identifying the specific vendors who had collected and remitted sales taxes to them. Many others would not have. Over the course of this dispute, MDOR was able to examine the records of certain event promoters identified by SSO, and it recovered documentation that SSO had remitted some sales taxes through those promoters.

¶30. On appeal, SSO contends the MDOR assessment did not comply with the statute's requirement that the MDOR commissioner "shall" make his assessment "from any

12

information available." Miss. Code Ann. § 27-65-37(1). SSO argues that since the records submitted by other taxpayers were "available," MDOR was required to examine the archived records submitted by all event promoters in the state in order to uncover any documentation they may have submitted of taxes SSO had remitted to them.

¶31. MDOR, for its part, maintains that although the records have been scanned into an electronic format, they cannot be reviewed by an automated search; the records would have to be manually reviewed. MDOR argues in its brief on appeal that it does not have the resources or the obligation to manually "search thousands of other taxpayers' account records in the hopes to find something that might pertain to SSO."

¶32. This Court has held that "from any information available" does not mean from "the best information available." *Marx v. Bounds*, 528 So. 2d 822, 826 (Miss. 1988). Thus, in *Marx*, the tax commission (MDOR's predecessor) was not required "to interview the taxpayer, his employees, or his friends" in making its assessment. *Id.* We see no reason not to apply the same logic to today's case.

## CONCLUSION

¶33. SSO was liable for the sales taxes on its sales. It failed to keep adequate records, and this Court has held that a taxpayer's "own undocumented recollection" is insufficient to defeat the prima facie case established by MDOR's assessment. *Marx*, 528 So. 2d at 827. Summary judgment was therefore appropriate in this case, and we affirm it.

¶34. **AFFIRMED.**

**RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN AND GRIFFIS, JJ., CONCUR.**

13