# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-00239-COA

**XIEU HA AND TRUONG NGUYEN**                                            **APPELLANTS**

**v.**

**CHRISTOPHER GRAHAM, IN HIS OFFICIAL**                          **APPELLEE**
**CAPACITY AS THE COMMISSIONER OF THE**
**MISSISSIPPI DEPARTMENT OF REVENUE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/24/2024 |
| TRIAL JUDGE: | HON. TIFFANY PIAZZA GROVE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANTS: | JAMES GARY McGEE JR. |
| ATTORNEYS FOR APPELLEE: | WILLIAM JAMES DUKES |
| | NATOSHA ELAINE MYERS |
| | NICHOLAS ALEXANDER LOMELI |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 08/19/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND LASSITTER ST. PÉ, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     The Mississippi Department of Revenue (MDOR) audited Gulf Fresh Seafood[1] and its owners (the Taxpayers) after they failed to file Mississippi tax returns over a series of years. Because the business lacked adequate records of its sales transactions, MDOR calculated the amount of taxes owed based on the results of an observational sales audit. The MDOR Board of Review affirmed the assessments. The Board of Tax Appeals (BTA)

---

[1] Gulf Fresh Seafood is a sole proprietorship owned by Troung Nguyen. Xieu Ha and Nguyen are married.

affirmed the assessment of $54,679 on the business but reduced the individual assessment from $92,200 to $23,898. The chancery court, after conducting de novo proceedings, affirmed the BTA's determinations. Finding no error, we affirm.

**FACTS AND PROCEEDINGS BELOW**

¶2.     MDOR initiated a sales tax audit of Gulf Fresh Seafood for the period of July 2016 to December 2019. MDOR also audited Ha and Nguyen individually for the period of January 1, 2011, through December 31, 2018. The Taxpayers consistently had failed to file Mississippi income tax returns for 2011 through 2016 and for 2018. As part of the audit process, MDOR asked the Taxpayers to produce financial documents to facilitate a cash flow analysis of the business, including a determination of gross sales proceeds.

¶3.     The Taxpayers provided incomplete documentation, including some bank statements, some z-tapes[2] with monthly net sales totals, some unfiled state tax returns, and purchase invoices for 2017. When the bank deposits for 2017 were compared with the purchase invoices, MDOR determined that some cash had been used to purchase inventory. However, no cash was deposited into the business's bank account for 2017. The majority of the business purchase invoices were missing, and the Taxpayers acknowledged that they did not reconcile cash and could not provide a record of where cash was spent. The Taxpayers' reported sales amounted to a markup of 60%, an amount characterized by MDOR as "unreasonably low." Additionally, the cash paid out for expenses differed from the business's

---

[2] The United States Tax Court has explained the "'Z' tape is a tape produced by a cash register which reflects the amount of all sales transactions entered into the machine." *Edgmon v. Comm'r*, 66 T.C.M. (CCH) 1093 (T.C. 1993).

daily sales journals.

¶4. Given the lack of adequate records, MDOR conducted an observational audit of Gulf Fresh Seafood, consisting of five separate on-site observations between November 2019 and February 2020. Looking at approximately 200 transactions, MDOR calculated an average cash-to-credit-card percentage ratio of 42% to 58%. The Taxpayers' available z-tapes indicated a cash-to-card ratio of closer to 20% to 80%. This discrepancy between the available taxpayer records and the observational audit led MDOR to conclude "that not all cash sales were recorded or rung up in the cash register by the Taxpayers during the audit period, nor were the total sales properly reported and taxes remitted to the Department." Using the observational audit data, MDOR determined that the Taxpayers had $654,951 in unreported cash sales during the audit period.

¶5. MDOR levied an assessment of $54,679 on Gulf Fresh Seafood[3] and an individual assessment of $92,200 on Ha and Nguyen as joint filers. Ha and Nguyen appealed to the MDOR Board of Review, which affirmed the assessments. They then appealed to the BTA, which upheld the assessment on the business but reduced the individual income tax assessment to $23,898. The BTA found that the individual assessment should be calculated based on Ha's and Nguyen's federal tax returns for the relevant years instead of by retroactively applying the error rate for the years of the sales tax audit.

¶6. The Taxpayers appealed to the chancery court for de novo proceedings.[4] Following

---

[3] *See* Miss. Code Ann. section 27-65-43 (Rev. 2024) (applying a 7% sales tax to gross proceeds of business sales).

[4] *See* Miss. Code Ann. § 27-77-7(5) (Rev. 2024) ("The chancery court shall try the

discovery and a hearing on competing motions for summary judgment, the chancellor granted partial summary judgment to MDOR, affirming the $54,679 tax assessment on the business proceeds and the $23,898 assessment on Ha and Nguyen individually.[5] The chancellor's final judgment noted that the facts are "uncontroverted that Taxpayers did not maintain a complete set of records sufficient for MDOR to determine the correct amount of tax due." This included a lack of complete purchase invoices, inventory records, bank statements, and sales transaction receipts or register tapes. The chancellor noted that the "Taxpayers were unable to reconcile cash and explain where cash received for sales was spent or used." Additionally, they "were unable to provide documentation as to the ratio of cash sales to credit card sales." They also could not state whether they received more than $100,000 in cash sales in the years 2016–2019.[6]

¶7. The chancellor's order further states that "[d]espite this Court's reservations regarding the observation method, the relevant statutes clearly establish that assessments made by the MDOR in cases of inadequate records may be based upon 'any information available' and are prima facie correct." The Taxpayers now appeal.

---

case de novo and conduct a full evidentiary judicial hearing on all factual and legal issues raised by the taxpayer. . . .").

[5] The chancellor dismissed MDOR's challenge to the BTA's reduction of the individual income assessment, agreeing with the BTA that the "retroactive application of results from an observation sales audit some six to eight years after the relevant individual income tax period cannot be the 'best information available' to the commissioner." MDOR does not challenge this holding on appeal.

[6] On this point, the Taxpayers argue on appeal that for 2017, at least, "it later became apparent that cash sales could easily be determined by subtracting the annual credit card sales amounts from the annual total sales amounts reflected in the Taxpayers' z-tapes."

## STANDARD OF REVIEW

¶8.     A de novo standard of review applies to appellate review of a chancery court's grant of summary judgment. *Miss. Dep't of Revenue v. Hotel and Restaurant Supply*, 192 So. 3d 942, 945 (¶5) (Miss. 2016). "Issues related to tax appeals are questions of law, which are reviewed . . . de novo." *Miss. Dep't of Revenue v. Comcast of Georgia/Virginia Inc.*, 300 So. 3d 532, 535 (¶12) (Miss. 2020); *see also Toolpushers Supply Co. v. Miss. Dep't of Revenue*, 379 So. 3d 333, 336 (¶9) (Miss. 2024).

## DISCUSSION

¶9.     The Taxpayers' argument on appeal centers on their assertion that the z-tapes provided to MDOR constituted a comprehensive and accurate record of the business's cash sales transactions. They argue that observational audits are unreliable and that MDOR instead should have relied on the cash-to-card ratios indicated by the register z-tapes to calculate the proper assessment. MDOR responds that, given the lack of adequate records accounting for cash transactions, and given the significant discrepancy of results between the available records and the observational audit, the Taxpayers have failed to rebut the statutory presumption of correctness of the assessment.

¶10.    The Taxpayers did not file tax returns for 2011 through 2016 and for 2018. Mississippi Code Annotated section 27-7-53 (Rev. 2024) provides:

> If no return is made by a taxpayer required by this chapter to make a return, the commissioner shall determine the taxpayer's liability from the best information available, which determination shall be prima facie correct for the purpose of this article . . . .

Concerning mandatory record keeping, a taxpayer is required by section 27-65-43 to

5

keep and preserve for a period of three (3) years adequate records of the gross income, gross receipts or gross proceeds of sales of the business, including all invoices of merchandise purchased, all bank statements and cancelled checks, and all other books or accounts as may be necessary to determine the amount of tax for which he is liable.

Additionally, these "records may be sampled for audit purposes[,] . . . and any assessment rendered as a result of same shall be considered prima facie correct." *Id.* Moreover,

If adequate records of the gross income or gross proceeds of sales are not maintained or invoices preserved as provided herein, or if an audit of the records of a taxpayer, or any return filed by him, or any other information discloses that taxes are due and unpaid, the commissioner shall make assessments of taxes, damages, and interest from *any information available*, which shall be prima facie correct.

Miss. Code Ann. § 27-65-37 (Rev. 2024) (emphasis added); *see also Jackson Land Food Mart. Inc. v. Frierson*, 314 So. 3d 146, 151 (¶26) (Miss. Ct. App. 2021); *United Roofing & Constr. of MS Inc. v. Miss. Dep't of Revenue*, 319 So. 3d 1164, 1172 (¶25) (Miss. Ct. App. 2020).

¶11.    "Any information available" does not necessarily mean "from the best information available." *Rawan Hayaf LLP v. Frierson*, 323 So. 3d 555, 564 (¶21) (Miss. Ct. App. 2021). "[T]he party against whom a presumption is directed has the burden of producing evidence to rebut the presumption." *United Roofing*, 319 So. 3d at 1173 (¶25). A "taxpayer's uncorroborated testimony that the assessments were excessive does not fulfill the taxpayer's burden of proof." *Marx v. Bounds*, 528 So. 2d 822, 827 (Miss. 1988). Such uncorroborated testimony, "coupled with a failure to maintain adequate records reflecting true sales, does not overcome the Commission's prima facie correct assessment, and, without other proof, does not suffice." *Id.*

¶12. The Taxpayers argue that observational audits are highly unreliable. MDOR observed 200 transactions during a five-month period, which they allege represents only a small portion of the transactions during that period. Additionally, the Taxpayers strenuously dispute MDOR's conclusion that not all cash sales were rung up at the register. The Taxpayers further argue that since the register z-tapes are a comprehensive and accurate measure of gross sales, it is irrelevant how cash was spent. Therefore, they argue that the lack of invoices and other records is irrelevant to a calculation of the assessment.[7]

¶13. However, the Taxpayers produced no evidence before the chancellor to rebut MDOR's assessment, only asserting that MDOR should have relied on the gross sales as recorded in the z-tapes.[8] Ultimately, we agree with the chancellor that the Taxpayers failed to rebut the presumption of correctness given to the assessment. The z-tape data (as available in the audit worksheets) were insufficient to base the assessment on in light of the inadequacy of the financial records as a whole. The observational audit resulted in a significant discrepancy between the observed cash sales and the register z-tape cash sales. The Taxpayers were unable to account for how they reconciled cash and could not produce complete records, including purchase invoices. Regardless of whether observational sales audits are an ideal method for estimating gross sales, MDOR was entitled to rely on "any

---

[7] The Taxpayers note that "MDOR observed the Taxpayers' retail operations on five different occasions and did not mention any incidents where cash sales were not rung up at the register."

[8] The Taxpayers did not submit the business's z-tapes into evidence before the chancellor. The evidence before the chancellor did include MDOR's audit worksheets, though, which incorporated data from some of the z-tapes provided by the Taxpayers to MDOR during the audit process.

information" and not necessarily the "best" information.

¶14.    The Taxpayers argue that the chancellor failed to address the disputed penalty and interest amounts, arguing that the penalty and interest should be abated in full. The chancellor upheld the BTA's assessments, which included a 10% penalty under Mississippi Code Annotated section 27-65-39 (Rev. 2024). This provision provides for a 10% penalty for "negligence or failure to comply with the provisions of this chapter . . . without intent to defraud." *Id.*; s*ee also Rawan Hayaf LLP*, 323 So. 3d at 564 (¶20). Statutory penalty and interest were also applied to the individual income tax assessment for failure to file and timely pay. *See* Miss. Code Ann. § 27-7-53-75 (Rev. 2024). The chancellor addressed the penalties and fees by upholding the determination of the BTA. This argument is without merit.

## CONCLUSION

¶15.    The chancellor correctly determined that MDOR was entitled to judgment as a matter of law. The Taxpayers did not present evidence to overcome the statutory presumption of correctness of MDOR's assessment. We therefore affirm the chancery court's order.

¶16.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**